**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Macias, et al.,<br><br>              Plaintiffs,<br>vs.<br><br>Drue Kaplan-Seikmann, et al.,<br><br>              Defendants. | No. CV-22-00280-PHX-SPL<br><br>**ORDER** |

      Before the Court are Motions to Dismiss filed by Defendants Dr. Tasha Haggar (Doc. 30), Bonnie Platter (Doc. 31), Forensic Counseling & Evaluations LLC (Doc. 34), and Arizona Department of Child Safety (Doc. 38). The Court rules as follows.

**I.    BACKGROUND**

      Plaintiffs Jesus and Francine Macias, divorced parents of four daughters, initiated this action on February 19, 2022, on behalf of themselves and their four children. (Doc. 1). On May 9, 2022, Plaintiffs filed the operative First Amended Complaint ("FAC"). (Doc. 4). The FAC alleges claims against eighteen defendants, all related to the investigation and removal of the children from their parents' custody by the Arizona Department of Child Safety ("DCS") and related proceedings that culminated in dismissal of the proceedings in Maricopa County Superior Court in February 2020. (Doc. 4). Fourteen defendants have answered the FAC. (Docs. 29, 37). The Court will provide a highly abbreviated summary of the FAC's allegations, focusing on those relevant to the pending Motions to Dismiss.

As of April 2016, all four daughters, the oldest two of whom were severely autistic, resided with Ms. Macias. (Doc. 4 at 3). On April 21, 2016, DCS received an anonymous report of child abuse and neglect stating, among other things, that the children were on severe food restrictions consisting of limited water and a small amount of bean soup and carrots for each meal. (Doc. 4 at 11). On May 6, 2016, DCS removed all four children from Ms. Macias's home, alleging malnourishment and dehydration. (Doc. 4 at 17–20). Four days later, following a meeting with Ms. Macias, DCS determined that the children were not in danger and returned them to Ms. Macias that day on specified conditions. (Doc. 4 at 21–22).

On May 25, 2016, DCS filed an In-Home Dependency Petition in juvenile court in Maricopa County requesting that the four children be declared dependent as to both Mr. and Ms. Macias. (Doc. 4 at 22). Defendant Platter, an assistant attorney general, was assigned as the advocate for the State. (Doc. 4 at 23). Plaintiffs allege that she then "began to advise, direct and coordinate DCS's investigation and handling of the Macias family matter," which continued through the ultimate dismissal of the matter. (Doc. 4 at 23, 43–44).

On June 29, 2016, DCS removed the children from Ms. Macias's home for a second time, despite Ms. Macias's compliance with DCS's conditions and services, alleging that it was necessary for the children's safety and wellbeing. (Doc. 4 at 27–30). On July 1, 2016, DCS filed a motion, allegedly based on false and misleading assertions, asking the juvenile court to place the children in physical custody of DCS. (Doc. 4 at 31). Although the FAC does not state the court's ruling, it appears that the motion was granted. Moreover, the juvenile court later granted a motion, allegedly also based on false and misleading evidence, barring Ms. Macias from visiting or communicating with her children, though visitation was eventually reinstated. (Doc. 4 at 38).

As part of the dependency proceedings, the juvenile court ordered Ms. Macias to undergo a psychological evaluation, again allegedly based on false and misleading evidence. (Doc. 4 at 39). The examination was conducted on November 26, 2016 by

Defendant Haggar, an employee of Defendant Forensic Counseling & Evaluations LLC ("FCE").[1] (Doc. 4 at 40). Defendant Haggar administered three tests for personality disorders, none of which produced results consistent with a disorder. (Doc. 4 at 40). Various other Defendants allegedly contacted Defendant Haggar before and after the examination to provide false information and suggest that Ms. Macias suffered from Factitious Disorder Imposed on Another ("Factitious Disorder"), previously known as Munchausen's By Proxy. (Doc. 4 at 40). On January 30, 2017, Defendant Haggar issued a report concluding that Ms. Macias had an "Other Specified Personality Disorder"—a DSM-5 disorder with no objective diagnostic criteria—and that there was some evidence that Ms. Macias may have Factitious Disorder, though a diagnosis could not be confirmed. (Doc. 4 at 41).

On November 29, 2017, Defendant Platter, on behalf of DCS, petitioned for permanent severance of Ms. Macias's parental rights. (Doc. 4 at 43). On January 17, 2020, after more than three years of conflict between DCS and Ms. Macias, the juvenile court held a severance trial and denied the petition to terminate Ms. Macias's parental rights. (Doc. 4 at 48). Specifically, the juvenile court found that DCS had failed to take reasonable efforts to reunite the family due to a pattern of conflict with Ms. Macias, that characterizations of Ms. Macias's visitation with her children were inaccurate and biased, that various Defendants treated Ms. Macias as though she had Factitious Disorder even though it was not diagnosed, and much more. (Doc. 4 at 48–51). Finally, on February 21, 2020, the juvenile court dismissed the matter in its entirety. (Doc. 4 at 51).

## II. **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

---

[1] The FAC alleges both that Defendant Haggar was employed by Defendant FCE and that Defendant FCE is "her company." (Doc. 4 at 6, 39). The meaning of the phrase "her company" is ambiguous as to whether Defendant was merely an employee or had an ownership role, so the Court reads the FAC to allege that Defendant Haggar is an employee of Defendant FCE based on the more specific allegation.

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

### III. DISCUSSION

#### A. DOCUMENTS OUTSIDE THE FAC

As an initial matter, Plaintiffs ask this Court to consider the juvenile court's January 17, 2020 ruling on the severance trial as incorporated by reference into the FAC (Doc. 50 at 5), while Defendants Haggar and FCE ask the Court to take judicial notice of the juvenile court's April 5, 2017 ruling following a dependency trial (Doc. 30 at 3 n.2; Doc. 34 at 3 n.1). First, under the incorporation-by-reference doctrine, "a *defendant* may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (emphasis added); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (stating that the policy reason behind the incorporation-by-reference rule is to "[p]revent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). Accordingly, Plaintiffs cannot request incorporation by reference, and the Court will consider only those portions of the severance ruling that are alleged in the FAC.

Second, courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Plaintiffs first argue that the dependency ruling is not a matter of public record given that juvenile court records are confidential. (Doc. 53 at 2). But a court can

take judicial notice of a court filing even if is sealed or otherwise in accessible to the public. *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6 ("While some of these documents are filed under seal, they nonetheless are readily verifiable and, therefore, the proper subject of judicial notice."). Plaintiffs also argue that judicial notice is inappropriate because many of the facts stated in the minute entry are disputed. (Doc. 53 at 2). Indeed, a court may not take judicial notice of a fact if it is subject to reasonable dispute. *Khoja*, 899 F.3d at 999. Even where a party disputes the factual or legal findings of a court order, however, a court may take judicial notice of "the fact that the . . . order issued and contained certain findings and conclusions." *Chatman v. Ferrell*, No. CV-17-03826-PHX-DLR, 2018 WL 3209389, at *1 (D. Ariz. June 29, 2018). Thus, the Court grants Defendants' request for judicial notice of the juvenile court's dependency ruling to the extent that the Court notices the issuance of the ruling and its contents—but not the truth of those contents.[2] (Docs. 40, 41).

### B. DEFENDANT TASHA HAGGAR

Plaintiffs allege four counts against Defendant Haggar: (1) Count Four for judicial deception pursuant to 42 U.S.C. § 1983, (2) Count Five for conspiracy to commit judicial deception pursuant to § 1983, (3) Count Six for failure to make reasonable efforts to reunite the Macias family pursuant to § 1983, and (4) Count Ten for intentional infliction of emotional distress ("IIED"). Defendant Haggar moves to dismiss all four claims. The Court will first address the § 1983 claims, followed by the IIED claim.

#### i. Section 1983 Claims

Defendant Haggar argues that she is not subject to liability under § 1983 because she was not acting under color of state law. Plaintiffs do not dispute that Defendant Haggar is a private actor. Still, "[a] private individual's action may be 'under color of

---

[2] Although it is within this Court's power to judicially notice the existence and contents of the juvenile court's severance ruling *sua sponte*, *see Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1115 (9th Cir. 2018), the Court declines to use this power to cure Plaintiffs' own failure to carefully draft the FAC to include all relevant facts.

state law' where there is significant state involvement in the action." *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (internal quotation marks omitted). There are four tests "for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Id.* at 445. Plaintiffs argue only that the joint action test applies. (Doc. 50 at 14).

"Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin*, 312 F.3d at 445 (internal quotation marks omitted). "A plaintiff may demonstrate a joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id.* at 445 (internal quotation marks omitted). Here, Plaintiffs argue that Defendant Haggar conspired with DCS and its employees. (Doc. 50 at 14). "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Id.* In other words, there must be "an agreement or 'meeting of the minds' to violate constitutional rights." *Id.* at 441 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989)). "[E]ach participant in a conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* at 445.

Here, taking the allegations in the FAC as true, Defendant Haggar issued a report in line with assertions made to her by DCS employees suggesting that Ms. Macias had personality disorders, despite those assertions being contrary to her clinical findings. (Doc. 4 at 40–42). Plaintiffs allege that Defendant Haggar's assessment of Ms. Macias showed no findings consistent with a personality disorder. (Doc. 4 at 40). Nonetheless, Defendant Haggar's report stated that there was evidence suggesting that Ms. Macias had Factitious Disorder and diagnosed her with "Other Specified Personality Disorder." (Doc. 4 at 40–41). Defendant Haggar opined that the latter disorder led Ms. Macias to deny her children food and fail to take responsibility for the negative impact her actions were

having on them, in accordance with the assertions made by DCS. (Doc. 4 at 41). Moreover, Plaintiffs allege that Defendant Haggar received a substantial portion of her compensation from work performed for DCS. (Doc. 4 at 39). These allegations collectively give rise to a reasonable inference that Defendant Haggar had a shared objective with DCS and its employees to deprive Ms. Macias of her relationship with her children. Thus, Plaintiffs have plausibly alleged that Defendant Haggar was a state actor under the joint action test.

Still, to state a § 1983 claim, a plaintiff must also properly plead that the defendant deprived them of a right secured under federal law. Defendant Haggar argues that Plaintiffs have failed to do so with respect to any of the three § 1983 claims against her. The Court will address them in turn.

*1. Judicial Deception*

There is "a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021). To allege a violation of that right, a plaintiff must plead "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Id.* at 1147. A misrepresentation is material if the court would have made a different decision had it received truthful information. *See Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009), *vacated in part on other grounds*, 661 F.3d 1201 (9th Cir. 2011) (mem.).

Defendant Haggar argues that the alleged misrepresentations were not material because her involvement in the matter began after the juvenile court had already granted the dependency and removed the children from Ms. Macias's home and because the FAC specifically alleges that the juvenile court did not rely on Defendant Haggar's report at the severance trial. (Doc. 30 at 11–12) In response, Plaintiffs concede that Plaintiffs do not make a claim against Defendant Haggar with respect to the dependency trial. (Doc. 50 at 9). Rather, Plaintiffs' Response sets forth a variety of facts not alleged in the FAC

7

about how a second evaluation by Defendant Haggar was material to portions of the juvenile court's ruling following the severance trial, including requiring Ms. Macias's parenting time to be supervised. (Doc. 50 at 9). The Court cannot, however, consider those facts. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."). Thus, the FAC fails to sufficiently plead a claim against Defendant Haggar for judicial deception. Because the facts mentioned in Plaintiffs' Response may suffice to state a claim—though the Court does not decide as much at this time—Plaintiffs will be given leave to amend.[3]

### 2. Conspiracy to Commit Judicial Deception

"The insufficiency of . . . allegations to support a [§] 1983 violation precludes a conspiracy claim predicated upon the same allegations." *Cassettari v. Nevada County*, 824 F.2d 735, 739 (9th Cir. 1987). As Plaintiffs have failed to plead a claim for judicial deception against Defendant Haggar, it follows that they have failed to plead a claim for conspiracy to commit judicial deception against her, though leave to amend will be given.

### 3. Failure to Make Reasonable Efforts to Reunite

Defendant Haggar argues that there is no legal authority that requires a private psychologist to attempt to reunite parents and their children.[4] (Doc. 30 at 13–14). Indeed, Plaintiffs cite no such authority, instead merely reciting facts related to the judicial deception claim (including the same facts not alleged in the FAC) and concluding without support that Dr. Haggar therefore breached a duty owed to Plaintiffs to reunite their family. (Doc. 50 at 17). Not only have Plaintiffs failed to plead the facts that purportedly support this claim, then, but they have also failed to provide any legal

---

[3] The Court is troubled by Plaintiffs' decision to oppose the Motion to Dismiss rather than file an amended complaint upon their realization that the relevant facts were "inadvertently not included in the FAC." (Doc. 50 at 9). It appears that decision has and will cause undue delay and drain the resources of the parties and this Court.

[4] Incidentally, it is not entirely clear to the Court what federal right Plaintiffs allege Defendant Haggar violated for purposes of this § 1983 claim, as Plaintiffs cite no legal authorities and Defendant Haggar cites only to state law.

8

foundation for it, and the Court will not do Plaintiffs' work for them. This claim will thus be dismissed. The Court is reluctant to provide Plaintiffs an opportunity to amend a claim that they have so woefully pled and argued, but because it is possible that the pleading could be cured by the allegation of other facts, leave to amend will be granted. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### ii. IIED Claim

To state a claim for IIED, a plaintiff must plead three elements: (1) "the conduct by the defendant must be 'extreme' and 'outrageous;'" (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct;" and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (internal quotation marks omitted). Here, again, Plaintiffs' argument in opposition to the Motion to Dismiss relies on a variety of facts not alleged in the FAC—namely Defendant Haggar's second report and its provision at the severance trial. (Doc. 50 at 17–18). The Court will therefore grant the Motion and give Plaintiffs leave to amend.

### iii. Summary

In sum, all four counts against Defendant Haggar will be dismissed with leave to amend. As a result, the Court need not address her arguments based on state statutory immunities or the statute of limitations.

### C. DEFENDANT FCE

Plaintiffs assert the same four claims against Defendant FCE as against Defendant Haggar: (1) Count Four for judicial deception pursuant to 42 U.S.C. § 1983, (2) Count Five for conspiracy to commit judicial deception pursuant to § 1983, (3) Count Six for failure to make reasonable efforts to reunite the Macias family pursuant to § 1983, and (4) Count Ten for IIED. Defendant FCE moves to dismiss all four claims. The Court will first address the § 1983 claims, followed by the IIED claim.

///

### i. Section 1983 Claims

Defendant FCE argues that the § 1983 claims against it must be dismissed because the claims are based on the conduct of its alleged employee, Defendant Haggar, and there is no respondeat superior liability under § 1983. (Doc. 34 at 6–7). Plaintiffs concede the latter point but argue that Defendant FCE is liable based on its own conduct. (Doc. 53 at 5–9). A private entity can be held liable under § 1983 only if the plaintiff shows that (1) the entity "acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of" the entity. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

The Court need not decide whether Plaintiffs have sufficiently pled that Defendant FCE acted under color of state law as Plaintiffs have not plausibly alleged that Defendant Haggar violated Plaintiffs' rights and even if they had, the FAC is entirely devoid of facts showing that she did so pursuant to an official policy or custom of Defendant FCE. Rather, Plaintiffs argue that Defendant FCE is liable because it had a longstanding relationship with DCS such that it was motivated to accept DCS's allegations about Ms. Macias as true and because Defendant Haggar was "acting on behalf of FCE." (Doc. 53 at 8). While the first point might be sufficient to allege that Defendant FCE was acting under color of state law pursuant to the joint action test—though the Court does not so decide—it does nothing to show that Defendant FCE actually violated Plaintiffs' constitutional rights. And the second point is merely a respondeat superior argument, which as noted, is not available under § 1983. *See Tsao*, 698 F.3d at 1139 (holding that an entity cannot be liable under § 1983 "*solely* because it employs a tortfeasor" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))). Because Plaintiffs have failed to plausibly allege that a policy or custom of Defendant FCE caused a violation of any of their rights, the three § 1983 claims against Defendant FCE will be dismissed, but the Court will give leave to amend.

///

///

### ii. IIED Claim

The Court will grant Defendant FCE's Motion to Dismiss the IIED claim for the same reason it will grant Defendant Haggar's: Plaintiffs' argument as to this claim relies at least in part on facts not alleged in the FAC regarding Defendant Haggar's second report. The Court will again grant leave to amend.

### iii. Summary

The Court will dismiss all four counts against Defendant FCE with leave to amend and need not address Defendant FCE's other asserted grounds for dismissal, including the statute of limitations.

## D. DEFENDANT BONNIE PLATTER

Plaintiffs allege seven counts against Defendant Platter: (1) Count Three for unlawful continuing custody pursuant to § 1983, (2) Count Four for judicial deception pursuant to § 1983, (3) Count Five for conspiracy to commit judicial deception pursuant to § 1983, (4) Count Six for failure to make reasonable efforts to reunite the Macias family pursuant to § 1983, (5) Count Seven for violation of Ms. Macias's right to make educational decisions for her daughters pursuant to § 1983, (6) Count Eight for violation of Ms. Macias's right to legal counsel pursuant to § 1983, and (7) Count Ten for IIED. Defendant Platter argues that all claims against her must be dismissed because she is entitled to absolute prosecutorial immunity.

"A prosecutor is absolutely immune when performing the traditional functions of an advocate." *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (internal quotation marks omitted). On the other hand, a prosecutor "is not entitled to such protection when [s]he is cast in the role of an administrator or investigative officer." *Id.* (internal quotation marks omitted). The purpose of prosecutorial immunity is "to protect the prosecutor from harassing litigation that would divert [her] time and attention from [her] official duties and to enable [her] to exercise independent judgment when deciding which suits to bring and in conducting them in court." *Id.* (internal quotation marks omitted). Thus, courts must "focus on the conduct for which immunity is claimed, not on the harm that the

conduct may have caused or the question whether it was lawful." *Id.* (internal quotation marks omitted). Prosecutorial immunity extends to a prosecutor's initiation and prosecution of dependency and severance proceedings. *See Neeley v. Arizona*, No. CV-19-05899-PHX-DJH, 2021 WL 2539726, at *3 (D. Ariz. May 19, 2021). It applies to both § 1983 and Arizona state-law claims. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *State v. Superior Ct.*, 921 P.2d 697, 701 (Ariz. Ct. App. 1996).

Beginning with the judicial deception and related conspiracy claims, it is plain that Defendant Platter was performing the traditional functions of an advocate with respect to those counts. One of the fundamental purposes of absolute prosecutorial immunity is to ensure that prosecutors have the "wide discretion in the conduct of the trial and the presentation of evidence" that is essential to reaching a just outcome. *See id.* at 426. Thus, in *Imbler*, the Supreme Court held that a prosecutor was entitled to absolute immunity at the pleading stage even where he was alleged to have wrongfully suppressed evidence favorable to a criminal defendant and intentionally allowed the presentation of false testimony. *Id.* at 416. Likewise, here, Plaintiffs allege that Defendant Platter encouraged and allowed witnesses to give false testimony to the juvenile court and also withheld favorable information. (Doc. 4 at 57). Because this falls within the prosecutor's traditional function of preparing and presenting evidence, Defendant Platter is entitled to prosecutorial immunity with respect to the judicial deception and conspiracy claims.

Nonetheless, despite the fact that prosecutorial immunity is absolute, Plaintiffs argue that there is an exception for vindictive conduct. (Doc. 46 at 13). This is a gross misstatement of the law. In support of their incorrect assertion, Plaintiffs cite three cases: (1) a federal habeas case in which the Supreme Court held that a prosecutor who threatened to indict a defendant on more serious charges if he did not accept a plea bargain was not vindictive conduct that violated the Due Process Clause (and to make matters worse, within this entirely unrelated case, Plaintiffs cite to a dissent); (2) an Arizona Court of Appeals case affirming dismissal of an indictment based on prosecutorial vindictiveness where the indictment followed dismissal of a prior

indictment on lesser charges for violation of the defendant's speedy trial rights; and (3) an Arizona Supreme Court case holding that executive public officials, such as the Director of the Arizona Department of Health Services who was the defendant in the case, are generally entitled only to qualified immunity. *See Bordenkircher v. Hayes*, 434 U.S. 357 (1978); *State v. Tsosie*, 832 P.2d 700 (Ariz. Ct. App. 1992); *Chamberlain v. Mathis*, 728 P.2d 905 (Ariz. 1986). Obviously, none of these cases abrogate the absoluteness of prosecutorial immunity in a civil case; there is no "vindictiveness" exception to prosecutorial immunity. *See Puentes v. County of Santa Clara*, 606 F. App'x 339, 340 (9th Cir. 2015) ("We affirm dismissal of the vindictive prosecution claim . . . because [the prosecutor] is entitled to absolute prosecutorial immunity."). Plaintiffs' claims against Defendant Platter for judicial deception and conspiracy to commit judicial deception will be dismissed without leave to amend because Defendant Platter has absolute immunity with respect to evidence presented to the juvenile court.

Moving to Plaintiffs' remaining claims against Defendant Platter, Plaintiffs argue that she took actions beyond the scope of her prosecutorial role. Specifically, Plaintiffs list ten actions by Defendant Platter alleged in the FAC:

> (1) Platter participated in the initial decision that Francine was only permitted to see her children at supervised visits held at Southwest Human Development ("SWHD"); (2) DCS employees conferred with Platter before instructing Defendant Kaplan of SWHD that Francine had a mental disorder, Munchausen's By Proxy; (3) Platter submitted a false and misleading report to the juvenile court on August 30, 2016 asking to terminate Francine's visitations with her children based on a trumped-up "incident" during one of Francine's visits; (4) Platter called a Child Family Team ("CFT") meeting without Francine on September 8, 2016 to discuss this trumped up "incident" and Francine's purported lack of cooperation and mental health issues; (5) Platter demanded that Francine's court-appointed special advocate, Ms. Larkin, be removed from the case when Ms. Larkin's reports of Francine's visits with her children were inconsistent with the false narrative presented by DCS and

SWHD; (6) in March 2017, Francine raised concerns about the girls' health and suggested dietary changes but Platter, not the DCS Defendants, rejected Francine's requests; (7) Platter sent emails to Francine's counsel in November and December 2017 stating that Francine would not make progress and would never reunify with her children, "period," without admitting to abusing her children, even though there were no allegations of abuse; (8) Platter provided false and derogatory information, which was documented nowhere, to Defendant Haggar, who performed Francine's court-ordered psychological evaluation; (9) Platter repeatedly communicated directly with Defendant Kaplan, a SWHD program manager, about the services offered to Francine; and (10) emails show that Platter was working with Kaplan to lobby for Francine's therapist, Dr. Capps-Conkle, to diagnose her with a Munchausen by Proxy, even though Platter knew Francine's therapist had reached the opposite conclusion.

(Doc. 46 at 8–9). While this is not an exhaustive list of Defendant Platter's conduct alleged in the FAC, these examples are generally representative of and analogous to the other conduct alleged.

The third and fifth actions involve filings and advocacy before the juvenile court, which is plainly covered by prosecutorial immunity for the reasons explained above. The second example does not involve any allegedly wrongful action by Defendant Platter. Further, the second, fourth, eighth, ninth, and tenth items are essentially allegations that Platter communicated with witnesses involved in the ongoing proceeding, which amounts to preparation for trial and falls within the traditional role of an advocate, even if she was attempting to improperly influence the witnesses. *See KRL v. Moore*, 384 F.3d 1105, 1113–14 (9th Cir. 2004) (holding that prosecutors were entitled to immunity for their assistance with a post-indictment search warrant because they were "not serv[ing] as free-standing legal advisors to police officers" but rather, because the indictment had issued, "they were performing a traditional function of an advocate for the State, namely overseeing trial preparations"); *see also Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984) (holding that a deputy attorney general who allegedly induced false testimony

was absolutely immune even though "inducing false testimony is wrongful and indefensible"). The seventh action is a communication between counsel in the matter related to the resolution of the case, which is certainly within the role of an advocate. *See Asque v. Commonwealth Allegheny County*, No. 07-294, 2007 WL 1247051, at *5 (D. Pa. Apr. 27, 2007) (finding that "[c]ommunicating with a defendant or defense counsel" falls within the ambit of prosecutorial immunity).

The first and the sixth allegations from Plaintiffs' list give the Court more pause, as they involve Defendant Platter making decisions about the services provided to Ms. Macias and her children by DCS—decisions ordinarily made by DCS and its employees. Defendant Platter's briefing does not address Plaintiffs' allegations of this sort. The Ninth Circuit has held that although some actions by social workers may be subject to prosecutorial immunity, discretionary decisions and recommendations by social workers are not. *See Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003). It has suggested that such discretionary decisions may include "recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care." *Id.* If a social worker is not immune when making such decisions, then neither is a lawyer. *See Torres*, 793 F.3d at 1051 (stating that the touchstone of prosecutorial immunity "is the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks omitted)). There is no indication that Defendant Platter's involvement in decisions as to supervised visitation or the children's diets had any relation to her prosecution of the juvenile court action, nor are they within the traditional functions of an advocate. Rather, like decisions as to a child's foster care placement, those actions are the type of administrative, discretionary decisions that fall outside of absolute prosecutorial immunity.

Because Defendant Platter moved to dismiss solely on prosecutorial immunity grounds, the Court's final task is to determine which claims against her are supported by allegations to which immunity does not attach. The supervised visitation allegation appears to support Count Three for unlawful continuing custody, as well as Count Six for

failure to reunite, so those claims survive. Under Count Seven, Plaintiffs allege that Defendant Platter interfered with Ms. Macias's right to make educational decisions for her daughters based on an email she sent advising that DCS had sole control over who could attend a meeting about their Individual Education Plans, stating that the meeting would be reset if Ms. Macias attended, and threatening her visitation if she communicated with her daughters' teachers. (Doc. 4 at 60). This is much like the other discretionary, administrative decisions, so the claim survives. Next, in Count Eight, Plaintiffs allege that Defendant Platter denied Ms. Macias her right to legal counsel by refusing to allow her counsel to attend Child Family Team meetings where Ms. Macias, "the service providers, and DCS discussed issues related to the litigation and the services provided to the Macias family." (Doc. 4 at 61). Because this action involves Defendant Platter's relationship with Ms. Macias and her counsel with respect to litigation issues, this falls within the traditional role of an advocate, and this claim will be dismissed without leave to amend. Finally, the non-immune conduct may support the IIED claim, so that claim will survive. In sum, Counts Four, Five, and Eight against Defendant Platter will be dismissed with prejudice, while the remaining claims will not be dismissed.

### E. DEFENDANT DCS

DCS argues that it is a non-jural entity that is not capable of being sued. (Doc. 38 at 3). Arizona law applies to determine whether DCS has the capacity to be sued. *See* Fed. R. Civ. P. 17(b); *Machowicz v. Maricopa County*, No. CV-21-00316-PHX-JJT, 2021 WL 4319206, at *2 (D. Ariz. Sept. 23, 2021). In Arizona, "a governmental entity may be sued only if the legislature has so provided." *Braillard v. Maricopa County*, 224 Ariz. 481 (Ariz. Ct. App. 2010). "The statutory provisions by which the legislature created DCS do not so provide." *East v. Arizona*, No. CV-17-01685-PHX-GMS, 2017 WL 6820141, at *2 (D. Ariz. Aug. 23, 2017) (citing A.R.S. §§ 8-451 to -892); *see also Neeley v. Arizona*, No. CV-19-05899-PHX-SPL, 2022 WL 44676, at *7 (D. Ariz. Jan. 5, 2022). Thus, DCS lacks the capacity to be sued. Even if DCS could be sued, courts have repeatedly rejected Plaintiffs' argument that DCS is subject to § 1983 liability under

*Monell*, because DCS is plainly a state entity rather than a municipal entity. *See, e.g.*, *Neeley*, 2022 WL 44676, at *7–8; *Ploof v. Arizona*, No. CV-21-00853-PHX-JJT, 2021 WL 5850878, at *5–6 (D. Ariz. Dec. 9, 2021); *Stanberry-Sproles v. Ariz. Dep't of Child Safety*, No. CV-22-00364-PHX-DWL, 2022 WL 1061913, at *2 (D. Ariz. Apr. 8, 2022). Plaintiffs' claims against DCS will be dismissed with prejudice.

## IV.  CONCLUSION

To summarize, all claims against Defendants Haggar and FCE will be dismissed with leave to amend. All claims against DCS and Counts Four, Five, and Eight against Defendant Platter will be dismissed with prejudice. Counts Three, Six, Seven, and Ten against Defendant Platter will survive. Accordingly,

**IT IS ORDERED** that Defendant Haggar's Motion to Dismiss (Doc. 30) is **granted**. All claims against Defendant Haggar are **dismissed with leave to amend**.

**IT IS FURTHER ORDERED** that Defendant Platter's Motion to Dismiss (Doc. 31) is **granted in part** and **denied in part** as follows:

1. The Motion is **granted** as to Counts Four, Five, and Eight, which are **dismissed with prejudice**; and
2. The Motion is **denied** as to Counts Three, Six, Seven, and Ten.

**IT IS FURTHER ORDERED** that Defendant FCE's Motion to Dismiss (Doc. 34) is **granted**. All claims against Defendant FCE are **dismissed with leave to amend**.

**IT IS FURTHER ORDERED** that Defendant DCS's Motion to Dismiss (Doc. 38) is **granted**. All claims against Defendant DCS are **dismissed with prejudice**, and the Clerk of Court shall **terminate** Defendant DCS as a party to this action.

**IT IS FURTHER ORDERED** that Plaintiffs may file a Second Amended Complaint curing the deficiencies outlined in this Order no later than **December 23, 2022**.

///

///

///

**IT IS FURTHER ORDERED** that if Plaintiffs do not file a Second Amended Complaint by December 23, 2022:

1. All claims dismissed with leave to amend by this Order shall be dismissed with prejudice;
2. The Clerk of Court shall terminate Defendants Haggar and FCE as parties to this action; and
3. Defendant Platter must file an Answer to the surviving claims against her no later than December 30, 2022.

Dated this 2nd day of December, 2022.

Honorable Steven P. Logan
United States District Judge