**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Macias, et al.,<br><br>               Plaintiffs,<br>vs.<br><br>Drue Kaplan-Seikmann, et al.,<br><br>               Defendants. | No. CV-22-00280-PHX-SPL<br><br>**ORDER** |

Before the Court are Motions for Partial Judgment on the Pleadings filed by Defendants Drue Kaplan-Siekmann, Carla White, and Southwest Human Development, Inc. ("SWHD") (collectively the "SWHD Defendants") (Doc. 99) and Defendants Britney Galati, Lourde Ramos-Bautista, Kevin Jones, Randy Hinckley, Maureen Jobe, Angela Castro, Lee Eastman, Phyllis Mitchum, Dawn Bradford, and Katalina Taunima (collectively the "DCS Defendants") (Doc. 110). The Court rules as follows.

**I.**     **BACKGROUND**

Plaintiffs Jesus and Francine Macias, divorced parents of four daughters, initiated this action on February 19, 2022, on behalf of themselves and their four minor children. (Doc. 1). On December 23, 2022, Plaintiffs filed the operative Second Amended Complaint ("SAC"). (Doc. 62). The SAC alleges claims against eighteen defendants, all related to the investigation and removal of the children from their parents' custody by the Arizona Department of Child Safety ("DCS") and the resulting dependency proceedings in Maricopa County Superior Court that were eventually dismissed in February 2020. (Doc.

62). Three defendants have been dismissed.[1] (Docs. 77, 88). The remaining defendants have answered the SAC. (Docs. 69, 70, 73, 90). On January 20, 2023, one defendant, Dr. Tasha Haggar, moved to dismiss the following three claims asserted against her: (1) Count Four, a 42 U.S.C. § 1983 claim for judicial deception; (2) Count Five, a § 1983 claim for conspiracy to commit judicial deceptions; and (3) Count Ten, for intentional infliction of emotional distress ("IIED"). (Doc. 76). On March 27, 2023, the Court dismissed the § 1983 claims and the IIED claim asserted by Mr. and Ms. Macias as individuals based on the statute of limitations. (Doc. 89 at 5–6). However, the Court held that the statute of limitations is tolled for the § 1983 claims and the IIED claim brought on behalf of the four minor children. (Doc. 89 at 5–6). After considering the merits of the claims, the Court found that all Plaintiffs failed to state a claim for IIED and held that the only surviving claims against Dr. Haggar are the two § 1983 claims—Counts Four and Five—brought on behalf of the four minor children. (Doc. 89 at 9). The Court will summarize the allegations against the defendants who have filed the pending Motions for Partial Judgment on the Pleadings. (Docs. 99, 110).

As of April 2016, all four daughters, the oldest two of whom are severely autistic, resided with Ms. Macias. (Doc. 62 at 3). On April 21, 2016, DCS received an anonymous report of child abuse and neglect stating, among other things, that the children were on severe food restrictions consisting of limited water and a small amount of bean soup and carrots for each meal. (Doc. 62 at 11). This set off nearly four years of conflict between Ms. Macias and DCS.

On May 6, 2016, DCS workers went to the Maciases' home and seized all four Macias children. (Doc. 62 at 17–18). On May 10, 2016, DCS determined that the four children were in no imminent danger, and the children were returned to Ms. Macias' care.

---

[1] All claims against Defendants Forensic Counseling & Evaluations LLC, the Arizona Department of Child Safety, and Kathleen Purdy have been dismissed. On August 31, 2022, Defendant Bonnie Platter also moved for dismissal of all claims alleged against her (Doc. 31), however, the Court only granted dismissal for Counts Four, Five, and Eight. (Doc. 60 at 17; Doc. 77).

(Doc. 62 at 22). On May 25, 2016, DCS filed an In-Home Dependency Petition in juvenile court in Maricopa County requesting that the four children be declared dependent as to both Mr. and Ms. Macias. (Doc. 62 at 23). The four Macias children initially remained in Ms. Macias' care following the filing of the dependency petition. (Doc. 62 at 23). However, on June 30, 2016, DCS again removed the Macias children from Ms. Macias' custody. (Doc. 62 at 28–29).

On July 29, 2016, Ms. Macias and the four Macias children began therapeutic supervised visits. (Doc. 62 at 36). The visits were supervised by SWHD. (Doc. 62 at 36). On October 14, 2016, however, the juvenile court issued an order stopping Ms. Macias' visits and all communication with the children. (Doc. 62 at 38). In November 2016, pursuant to the juvenile court's order, Ms. Macias submitted to a psychological evaluation. (Doc. 62 at 39). On January 30, 2017, Ms. Macias was diagnosed with a personality disorder, which she contends was the result of false and misleading information provided by DCS and SWHD. (Doc. 62 at 40–41). Thereafter, DCS allowed Ms. Macias to have limited contact with her children through monitored telephonic visitations. (Doc. 62 at 43).

On November 29, 2017, DCS petitioned the juvenile court for permanent severance of Ms. Macias' parental rights. (Doc. 62 at 43). The proceedings culminated in a 20-day severance trial held over a ten-month period. (Doc. 62 at 43, 48). On January 17, 2020, the juvenile court denied the petition to terminate Ms. Macias' parental rights, finding that DCS and SWHD failed to make reasonable efforts to reunite the family. (Doc. 62 at 48–51). On February 21, 2020, the juvenile court dismissed the dependency matter in its entirety. (Doc. 62 at 52). Still, Ms. Macias' interaction with her children was limited to, at most, supervised visitation from no later than August 2016 through late 2020. (Doc. 62 at 37, 52).

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The issue presented by a Rule 12(c) motion is substantially the same

as that posed in a Rule 12(b)(6) motion — whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In analyzing a 12(c) motion, the district court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (citations omitted). Courts have discretion in appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).

### III.    DISCUSSION

The SAC asserts six § 1983 claims against the various individual DCS Defendants. Those claims include: (Count One) unlawful removal of the four Macias children and interference with familial relations; (Count Three) unlawful continuing custody of the four Macias children; (Count Four) judicial deception; (Count Five) conspiracy to commit judicial deception; (Count Six) failure to make reasonable efforts to reunite the Macias family; and (Count Nine) violation of Ms. Macias' right to make medical decisions for her daughters. The SAC also asserts Counts Four and Five against the SWHD Defendants and Count Six against Defendants SWHD and Siekmann-Kaplan. The SAC also asserts a state law claim for IIED against the DCS Defendants and the SWHD Defendants.

Within their respective motions, the DCS Defendants and the SWHD Defendants argue that all claims directly against Defendants Hinckley, Taunima, and White should be dismissed entirely, Mr. and Ms. Macias' § 1983 and IIED claims are barred by the statute of limitations, and all Plaintiffs fail to state a claim for IIED. The Court will address each argument in turn.

### a. Claims Against Defendants Carla White, Randy Hinckley, and Katalina Taunima

"Under Section 1983, a supervisor can be held liable in his or her individual capacity 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Schindler v. Contra Costa Cnty.*, No. 21-CV-02984-JSW, 2023 WL 2414864, at *3 (N.D. Cal. Mar. 8, 2023) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "Dismissal of a complaint for failure to state a claim is appropriate where the allegations are conclusory and unsupported by specific facts." *Lee v. Washington State*, 985 F.2d 573 (9th Cir. 1993).

#### *i. Carla White*

The SWHD Defendants move to dismiss Counts Four, Five and Ten asserted against Defendant White because the SAC fails to assert specific allegations against Defendant White to support these claims. (Doc. 99 at 4–6). The SAC alleges that Defendant White was employed by SWHD as a Visitation Supervisor, and that her "actions were taken in that capacity and were done in intentional or reckless disregard of Plaintiffs' rights under federal law." (Doc. 62 at 6). The SAC alleges that the SWHD Defendants "(1) severely restricted [Ms. Macias'] interactions with her children and (2) recorded allegations that were either completely false or deliberately slanted and biased against [Ms. Macias]." (Doc. 62 at 36–37). The SAC does not allege any additional facts to support these allegations. The SAC also does not assert any other allegations against Defendant White.

Plaintiffs argue that these allegations are sufficient to plead a claim of judicial deception and conspiracy against Defendant White. The Court disagrees. To begin,

Plaintiffs argue that the SAC "at least implicitly places [Defendant White] in a position to supervise SWHD's actions relating to the Macias family." (Doc. 104 at 5–6). Plaintiffs also argue that the SAC specifically alleges that Defendant White was responsible for SWHD's false allegations against Ms. Macias. (Doc. 104 at 5–6). This argument is insufficient. Even if Defendant White supervised SWHD's actions relating to the Macias family it would not be enough to subject her to liability. *See Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) ("Under Section 1983, supervisory officials are not liable for actions of subordinates."). Plaintiffs fail to allege that Defendant White engaged in wrongful conduct that was sufficiently connected to the constitutional violations. (Doc. 114 at 7–8). Accordingly, Counts Four, Five and Ten asserted against Defendant White are dismissed. The Court, however, rejects the SWHD Defendants' request for sanctions under Rule 11. *See Calif. Architectural Bldg. Prods. v. Franciscan Ceramics,* 818 F.2d 1466, 1472 (9th Cir.1987) (reversing an award of sanctions where, although the evidence was weak and could not survive summary judgement, the court could not "say that the complaint [was] so lacking in plausibility as to ... subject [the attorney] to sanctions under Fed.R.Civ.P. 11").

       *ii. Randy Hinckley*

The DCS Defendants move to dismiss Counts One, Three, Nine, and Ten asserted against Defendant Hinckley because the SAC fails to assert specific allegations against Defendant Hinckley to support these claims. (Doc. 110 at 5–6). The SAC only alleges that Defendant Hinckley was employed by DCS as a Supervisor, and that his "actions were taken in that capacity and were done in intentional or reckless disregard of Plaintiffs' rights under federal law." (Doc. 62 at 4–5, 11–12). Plaintiffs argue that they should be able to pursue claims against Defendant Hinckley because he supervised one of the defendants directly involved in the investigation. (Doc. 122 at 8). As previously explained, however, Defendant Hinckley's supervisory title is not enough to hold Defendant Hinckley liable for Plaintiffs' injuries. Because the SAC does not allege that Defendant Hinckley was personally involved in wrongdoing connected to the claims asserted against him, Counts One, Three, Nine, and Ten asserted against Defendant Hinckley are dismissed.

### iii. Katalina Taunima

Finally, the DCS Defendants move to dismiss Counts Four, Five, Nine, and Ten asserted against Defendant Taunima because the SAC fails to assert specific allegations against Defendant Taunima to support these claims. (Doc. 110 at 5–6). The SAC alleges that Defendant Taunima was employed by DCS as a Case Manager, and her "actions were taken in that capacity and were done in intentional or reckless disregard of Plaintiffs' rights under federal law." (Doc. 62 at 6). The SAC also alleges that after Ms. Macias requested a professional analysis of the potential for family reunification, the juvenile court ordered Dr. Al Silbermann to conduct the evaluation. (Doc. 62 at 46–47). Paragraph 194 of the SAC provides in part that:

> Because of Dr. Silbermann's previous work for DCS in dependency cases, DCS contacted him before the examination in an attempt to prejudice Silbermann against [Ms. Macias]. **Defendant Taunima contacted Silbermann and provided him DCS's position and emphasized that she was mentally ill and "manipulative."** Dr. Silbermann was encouraged to video the bonding evaluation. He later testified that in his decades of experience, he had never been asked by DCS to video his evaluation.

(Doc. 62 at 46–47). Plaintiffs argue that they should be allowed to pursue claims against Defendant Taunima because the SAC specifically alleges that she attempted to influence Dr. Silbermann against Ms. Macias before he examined the Macias children. (Doc. 122 at 9). The Court finds that these allegations are sufficient to survive dismissal because they support the claims asserted against Defendant Taunima. *See Schindler v. Contra Costa Cnty.*, No. 21-CV-02984-JSW, 2023 WL 2414864, at *3. Therefore, the Court denies the DCS Defendants' request to dismiss Defendant Taunima.

### b. Statute of Limitations

A statute of limitations defense is ordinarily raised in a responsive pleading, but it "may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint." *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n.1 (9th Cir. 1987). Still, "'[d]ismissal on statute of limitations grounds can be granted pursuant to

Fed.R.Civ.P. 12(b)(6) "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled," or had otherwise not yet accrued.'" *ARA Inc. v. City of Glendale*, No. CV-17-02512-PHX-GMS, 2018 WL 1411787, at *3 (D. Ariz. Mar. 21, 2018) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)); *see Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)." (citation omitted)). The Court addresses the statute of limitations for the § 1983 claims followed by the IIED claim.

### *i. Mr. and Ms. Macias' § 1983 Claims*

Section 1983 does not contain a statute of limitations, so "federal courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling . . . ." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014). Arizona's statute of limitations for personal injury actions is two years. A.R.S. § 12-542. Though state law determines the limitations period, "[f]ederal law determines when a cause of action accrues and when the statute of limitations begins to run for a § 1983 claim." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.*

Here, the Court previously found that Mr. and Ms. Macias' § 1983 claims accrued no later than January 17, 2020, when the juvenile court denied the termination petition. (Doc. 89 at 5). In their Reply, however, Plaintiffs ask the Court to reconsider the accrual date.[2] Raising the same argument as before, Plaintiffs contend that the accrual date should be February 21, 2020—the date that the dependency proceedings terminated. (Doc. 81 at 5–6; Doc. 104 at 2; Doc. 122 at 3). Plaintiffs also provide supplemental caselaw, *McDonough v. Smith*, 139 S.Ct. 2149 (2019), to bolster this argument.

In *McDonough*, the United States Supreme Court addressed the procedural standard

---

[2] Plaintiffs also oppose Defendants' Motions "to preserve their appellate rights regarding the accrual date for Plaintiffs' claims." (Doc. 104 at 2; Doc. 122 at 3).

8

for bringing forward a § 1983 claim alleging unlawful criminal proceedings. More specifically, the Supreme Court explained that "'to recover damages for allegedly unconstitutional *conviction* or *imprisonment*, or for other harm caused by actions whose unlawfulness would render a *conviction* or *sentence* invalid,'" a plaintiff must first prove that his conviction had been invalidated in some way. *McDonough v. Smith*, 139 S. Ct. 2149, 2157, 204 L. Ed. 2d 506 (2019) (quoting *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)) (emphasis added). Accordingly, the Supreme Court held that the statute of limitations for a § 1983 claim alleging prosecution by fabricated evidence do not begin to run until the preceding *criminal proceedings* has ended. *Id.* at 2161.

Here, Plaintiffs did not have to wait until the dependency proceedings terminated prior to filing their claims because Plaintiffs' § 1983 claims do not involve any allegations pertaining to unlawful criminal proceedings. Therefore, Plaintiffs should have brought their claims forward once they knew that they were injured. The SAC specifically alleges that on January 17, 2020, "[the juvenile] court found that throughout the case, DCS agents and [SWHD] had failed to fulfill their statutory and constitutional obligation to make reasonable efforts to reunite [Ms. Macias] with her children." (Doc. 62 at 49). The SAC clearly supports that Mr. and Ms. Macias should have known by January 17, 2020, that they had been injured by the DCS Defendants and the SWHD Defendants. Thus, the Court stands on its previous ruling that Mr. and Ms. Macias' § 1983 claims accrued no later than January 17, 2020. Because this action was not filed until more than two years later, on February 19, 2022, the § 1983 claims by Ms. and Mr. Macias as individuals will be dismissed based on the statute of limitations.

### ii. Mr. and Ms. Macias' IIED Claim

In Arizona, "[a] claim for IIED must be brought within two years of the accrual date." *Mahon v. Hammond*, No. 1 CA-CV 14-0539, 2016 WL 337493, at *3 (Ariz. Ct. App. Jan. 28, 2016). An IIED claim accrues when "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld &*

*Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995); *see also Alexander v. City of Mesa*, No. CV-14-00754-PHX-SPL, 2015 WL 13655673, at *8 (D. Ariz. Sept. 30, 2015).

Here, too, Plaintiffs' claim accrued no later than January 17, 2020, when they knew or should have known, based on the juvenile court's minute entry, of the DCS Defendants' and the SWHD Defendants' mishandling of the Macias case. Again, then, Mr. and Ms. Macias' individual IIED claims are barred by the statute of limitations.[3]

### c. Intentional Infliction of Emotional Distress

To state a claim for IIED, a plaintiff must plead three elements: (1) "the conduct by the defendant must be 'extreme' and 'outrageous;'" (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct;" and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (internal quotation marks omitted). "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Nelson v. Phx. Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)). Courts may use its discretion to determine whether conduct is extreme and outrageous. *See Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980).

Plaintiffs argue that the SWHD Defendants' role in the Macias case was outrageous for the following reasons:

> They imposed unreasonable restrictions on [Ms. Macias'] visits with her daughters – restrictions reserved for abusive parents, when there were no allegations of abuse against [Ms.

---

[3] The DCS Defendants also raise an unopposed argument that "[b]ecause Plaintiffs have sued the DCS Defendants in their capacity as public employees, the statute of limitations for Plaintiffs' IIED claim against the DCS Defendants is <u>one year</u>." (Doc. 110 at 10) (emphasis in original). The Court agrees. *See* A.R.S. § 12-821 ("All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward.").

10

> Macias]. *See* SAC ¶ 151. The SWHD Defendants affirmatively sought out evidence of Munchausen's Syndrome in an effort find [*sic*] it. *See* id. ¶¶ 154-55, 189, 192, 196. Instead of fulfilling their duty to provide therapeutic services to the Macias family for purposes of reuniting the family, they made affirmative misrepresentations to the juvenile court and other service providers designed to present [Ms. Macias] in the worst possible light and to sever [Ms. Macias'] relationship with her daughters. *See id.* ¶¶ 154, 157-59, 161-64, 178, 184, 196.

(Doc. 104 at 6–7). These allegations align with the juvenile court's conclusion that the SWHD Defendants mishandled the Macias case. (*See* Doc. 62 at 49, 51). And accepting these allegations as true, the SWHD Defendants enforced unreasonable restrictions during visitations and "repeatedly lied to the juvenile court and other service providers with the goal of severing [Ms. Macias'] parental rights to her children." (Doc. 104 at 7). While the Court finds this behavior unjustifiable, it does not amount to extreme or outrageous conduct capable of surviving a motion to dismiss. *See Adams v. Estrada*, No. 2 CA-CV 2013-0074, 2014 WL 265660, at *8 (Ariz. Ct. App. Jan. 23, 2014) (finding that making false statements do not rise to the high level of outrageousness required to prove an IIED claim); *see Norton v. Arpaio*, No. CV-15-00087-PHX-SPL, 2019 WL 1409536, at *11 (D. Ariz. Mar. 28, 2019) ("There is simply no evidence in the record to suggest [the defendants'] actions fall at the very extreme edge of the spectrum of possible conduct.") (citation and quotation omitted); *see also Douglass v. City of Mesa*, No. CV-17-04686-PHX-SMB, 2020 WL 1033128, at *9 (D. Ariz. Mar. 3, 2020) ("Surely, attempting to protect an individual from residing in an unsafe home is not extreme and outrageous conduct even if the house were [*sic*] erroneously found unsafe."). Accordingly, Plaintiffs fail to state a claim for IIED against the SWHD Defendants.

Similarly, Plaintiffs allege that the DCS Defendants engaged in outrageous conduct when they "presented false information to the juvenile court, repeatedly, over the course of three years, for the express purpose of severing [Ms. Macias'] parental rights." (Doc. 122 at 7). Accordingly, for the same reasoning, Plaintiffs' IIED claim against the DCS Defendants also fail.

## IV. CONCLUSION

In sum, the claims against Defendants Hinckley and White are dismissed, Mr. and Ms. Macias' § 1983 and IIED claims are barred by the statute of limitations, and all Plaintiffs fail to state a claim for IIED. Moreover, the SWHD Defendants' request for sanctions under Rule 11 is denied. Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied, however, where amendment would be futile. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). Here, the Court finds that amendment would be futile. The statute of limitations defects cannot be cured, nor can the IIED claim. Moreover, Plaintiffs have already amended their complaint twice. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) ("[A] district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." (internal quotation marks omitted)). Accordingly,

**IT IS ORDERED** that the SWHD Defendants' Motion for Partial Judgment on the Pleadings (Doc. 99) is **granted in part** and **denied in part** as follows:

1. The Motion is **granted** as to all of Plaintiffs' claims against Defendant White, all of Plaintiffs' IIED claims, and Mr. and Ms. Macias' § 1983 claims. These claims are **dismissed with prejudice**.

2. The Motion is **denied** as to the SWHD Defendants' request for sanctions.

**IT IS FURTHER ORDERED** that the DCS Defendants' Motion for Partial Judgment on the Pleadings (Doc. 110) is **granted in part** and **denied in part** as follows:

1. The Motion is **granted** as to all of Plaintiffs' claims against Defendant Hinckley, all of Plaintiffs' IIED claims, and Mr. and Ms. Macias' § 1983 claims. These claims are **dismissed with prejudice**.

2. The Motion is **denied** as to terminating Defendant Taunima.

///

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate Defendants White and Hinckley as parties to this action.

Dated this 4th day of January, 2024.

                                          Honorable Steven P. Logan
                                          United States District Judge