**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Macias, et al., | No. CV-22-00280-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Drue Kaplan-Seikmann, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Approval of Settlement and Disbursement of Settlement Proceeds. (Doc. 224). Plaintiff Jesus Macias also requests that as the minor Plaintiffs' father and legal guardian, the Court appoint him as conservator for purposes of effectuating the settlement, and that the settlement be reduced to judgment. (*Id.* at 2). Also before the Court is Plaintiffs' Motion for Status Conference (Doc. 225), in which the Plaintiffs' request a status conference to address any questions to Court may have regarding the proposed settlement agreement. (*Id.* at 1)

**I.    BACKGROUND**

Plaintiffs Jesus and Francine Macias, divorced parents of four daughters, initiated this action on February 19, 2022, on behalf of themselves and their four minor children, JM, ZM, SM, and AM. (Doc. 1). On December 23, 2022, Plaintiffs filed the operative Second Amended Complaint ("SAC"). (Doc. 62). The SAC alleged claims against 18 defendants, all related to the investigation and removal of the children from their parents' custody by the Arizona Department of Child Safety ("DCS") and resulting dependency

proceedings in Maricopa County Superior Court that were eventually dismissed in February 2020. (*Id.*).

As of April 2016, all four daughters, the oldest two of whom are severely autistic, resided with Ms. Macias. (*Id.* at 3). On April 21, 2016, DCS received an anonymous report of child abuse and neglect stating, among other things, that the children were on severe food restrictions consisting of limited water and a small amount of bean soup and carrots for each meal. (*Id.* at 11). This set off nearly four years of conflict between Ms. Macias and DCS.

On May 6, 2016, DCS workers went to the Maciases' home and seized all four Macias children. (*Id.* at 17–18). On May 10, 2016, DCS determined that the four children were in no imminent danger, and the children were returned to Ms. Macias' care. (*Id.* at 22). On May 25, 2016, DCS filed an In-Home Dependency Petition in juvenile court in Maricopa County requesting that the four children be declared dependent as to both Mr. and Ms. Macias. (Doc. 62 at 23). The four Macias children initially remained in Ms. Macias' care following the filing of the dependency petition. (*Id.*). However, on June 30, 2016, DCS again removed the Macias children from Ms. Macias' custody. (*Id.* at 28–29).

On July 29, 2016, Ms. Macias and the four Macias children began therapeutic supervised visits. (*Id.* at 36). The visits were supervised by Defendant Southwest Human Development, Inc. ("SWHD"). (*Id.*). On October 14, 2016, however, the juvenile court issued an order stopping Ms. Macias' visits and all communication with the children. (*Id.* at 38). In November 2016, pursuant to the juvenile court's order, Ms. Macias submitted to a psychological evaluation. (Doc. 62 at 39). On January 30, 2017, Ms. Macias was diagnosed with a personality disorder, which she contends was the result of false and misleading information provided by DCS and SWHD. (*Id.* at 40–41). Thereafter, DCS allowed Ms. Macias to have limited contact with her children through monitored telephonic visitations. (*Id.* at 43).

On November 29, 2017, DCS petitioned the juvenile court for permanent severance of Ms. Macias' parental rights. (*Id.*). The proceedings culminated in a 20-day severance

trial held over a 10-month period. (*Id.* at 43, 48). On January 17, 2020, the juvenile court denied the petition to terminate Ms. Macias' parental rights, finding that DCS had failed to make reasonable efforts to reunite the family. (*Id.* at 48–49). Finally, on February 21, 2020, the juvenile court dismissed the dependency matter in its entirety. (Doc. 62 at 52). Still, Ms. Macias' interaction with her children was limited to, at most, supervised visitation from no later than August 2016 through late 2020. (*Id.* at 37, 52).

After years of litigation before this Court, only a few claims and parties remain. These are two of Plaintiffs SM and AM's 42 U.S.C. § 1983 claims—Count One: Unlawful Removal of Children and Interference with Familial Relations and Count Four: Judicial Deception—against Defendants Britney Galati, Kevin Jones and Lourde Ramos-Bautista. (Doc. 224). In late December 2024, these parties notified the Court that they had reached a settlement agreement. (Doc. 211). On April 25, 2024, Plaintiff Jesus Macias, as parent and legal guardian of minors SM and AM, filed the present Motion for Approval of Settlement and Distribution of Settlement Proceeds. (*Id.*).

## II.   LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id*. (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). This duty applies "even when the settlement has been 'recommended or negotiated by the minor's parent or guardian ad litem.'" *Texas Ins. Co. v. Athena Logistic Sols. LLC*, CV-23-00038-TUC-RM, 2024 WL 309942, at *3 (D. Ariz. Jan. 26, 2024) (quoting *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983)).

In *Robidoux*, the Ninth Circuit held that district courts should approve a proposed settlement of minors' claims so long as "the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases." 638 F.3d at 1182.

Additionally, the Ninth Circuit explained that district courts should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.*

### III. DISCUSSION

The proposed settlement is a lump-sum payment of $175,000. (Doc. 224 at 1). The Motion states that Plaintiff Jesus Macias' counsel undertook representation on a 45% contingency fee basis. (*Id.* at 5); *see Robidoux*, 638 F.3d at 1182 (finding that "the district court erred when it focused on the admittedly large proportion of the total settlement value going to Plaintiffs' counsel, instead of reviewing the fairness of each minor's net recovery in isolation."). Minus deductions for attorneys' fees and costs, the net settlement pool is $93,807.92. (Doc. 224 at 3). This net settlement will be divided equally between SM and AM, so that each minor will receive $46,903.96 to be held in annuity accounts on their behalf. (*Id.* at 6). The minors will each receive $10,000 payable annually and guaranteed for four years, beginning on April 10, 2027, followed by guaranteed lump sum payment of $16,554.51 on April 10, 2034. (Doc. 224-2 at 3).

As noted above, the Court must consider the outcome of similar cases to determine whether the sum to settle the minors' claims is reasonable. *See Robidoux*, 638 F.3d at 1181. Although cases analyzing settlements with similar facts and claims are scarce within the Ninth Circuit, the Court finds the recovery appropriate considering those received in other actions involving alleged wrongful separation and judicial deception. *See generally Pellerin v. Wagner*, 2:14-CV-2318 JWS, 2019 WL 13175792, at *2 (D. Ariz. Sept. 17, 2019) (locating only one decision involving comparable wrongful removal situation and approving $25,000 annuity settlement for wrongfully removed minors).

For example, in *Doe v. Sierra Cnty.*, 2:14-CV-01552-MCE, 2015 WL 4757915 (E.D. Cal. Aug. 11, 2015), the court approved an $80,000 settlement as fair and reasonable. *Doe*, 2015 WL 4757915, at *2. In that case, Child Protective Services removed the plaintiff and her brother when she was four years old. *Id.* at *1. Despite returning her brother shortly

after removal, the minor plaintiff was allegedly wrongfully separated from her mother for nearly six years and, during that time, lived in seven different placement homes and subsequently suffered from mental health disorders. *Id.* In contrast, in *Carefoot v. Cnty. of Kern*, the court approved a settlement payment of $11,250.00 to a minor plaintiff. *Carefoot v. Cnty. of Kern*, 117CV00456AWIJLT, 2019 WL 3026989, at *3 (E.D. Cal. July 11, 2019), *report and recommendation adopted*, 117CV00456AWIJLT, 2019 WL 3943970 (E.D. Cal. Aug. 21, 2019). In that case, the minor plaintiff was removed from his foster parent's care for only approximately two months when he was an infant. *Id.* The court found the award fair and reasonable in light of the short removal period, the absence of any lasting psychiatric injuries, and the low likelihood that the plaintiff remembered the trauma of the separation. *Id.*

The facts of the present case fall somewhere in the middle. Although Plaintiffs SM and AM were separated from their parents for approximately three and a half years total, the parties seek to settle Count One, which pertains to the alleged wrongful removal that took place between May 5, 2016 and June 30, 2016, and Count Four, Plaintiffs' judicial deception claim. (Doc. 62 at 54). Therefore, while the settlement in *Doe v. Sierra Cnty* is markedly higher than this proposed settlement, here, Plaintiffs SM and AM were separated for a much shorter period than the six-year-long removal in *Doe*. However, Plaintiffs SM and AM were seven years old at the time of removal (Doc. 62 at 8) and suffered trauma based on the removal (*Id.* at 29; Doc. 201 at 17, 21–22). These factors warrant a higher settlement than the settlement in *Carefoot*, in which the infant minor could not remember the removal and did not suffer lasting negative effects. Additionally, the proposed settlement is much greater than those approved in other cases involving § 1983 judicial deception claims. *See Benavidez v. Cnty. of San Diego*, 18-CV-0558-CAB-AGS, 2022 WL 448512, at *1 (S.D. Cal. Feb. 14, 2022), *report and recommendation adopted*, 318CV0558CABAGS, 2022 WL 617313 (S.D. Cal. Mar. 2, 2022) (finding $10,000 settlement fair and reasonable for minor plaintiffs' judicial deception claim). Thus, on balance, the Court finds the proposed settlement award fair and reasonable considering

similar cases and the facts of the case.

Moreover, the Court finds that settlement is in the minors' best interests. In the declaration attached to the present Motion, Plaintiffs' counsel emphasized the challenges with pursuing their claims absent settlement approval in light of former Plaintiff Francine Macias' refusal to participate in the litigation or communicate with Plaintiffs. (Doc. 224-1 at 3). Ms. Macias was a central figure in the underlying events of this case, and without her participation, the Court is concerned about Plaintiffs' ability to try their case. Plaintiffs' counsel and Mr. Macias also noted their concerns about the negative emotional impact that testifying at trial would have on the minors. (*Id.* at 3–4). Thus, the Court finds that settlement is in the minor Plaintiffs' best interests. Additionally, the Court finds that it is in the minors' best interests to place AM and SM's portions of the settlement funds into annuities, as doing so will ensure the preservation and growth of the proceeds, prevent mismanagement, and allow the minors to receive funds at a time when they have sufficient maturity. Accordingly, the Court will grant Plaintiffs' Motion for Approval of Settlement.

Lastly, Mr. Macias requests the Court appoint him as conservator pursuant to Fed. R. Civ. P. ("Rule") 17(c) for purposes of effectuating the settlement. (Doc. 224 at 2). The Court will grant Mr. Macias' request and appoint him as conservator for the purposes of settling the case and effectuating the settlement.

### IV.     CONCLUSION

The Court has reviewed Plaintiffs' Motion and finds the settlement is fair and reasonable. Good cause appearing, the Court will approve the settlement of Plaintiffs SM and AM's Counts One and Four against Defendants Britney Galati, Kevin Jones and Lourde Ramos-Bautista. Additionally, as the Court has no questions for the parties regarding the settlement, and as "approval of the proposed settlement is the last pending issue necessary for resolution of this matter," (Doc. 225 at 1), the Court will deny Plaintiffs' Request for Status Conference (Doc. 225) as moot. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Approval of Settlement and Disbursement of Settlement Proceeds (Doc. 224) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff Jesus Macias, as parent and a legal guardian of minor Plaintiffs SM and AM, is appointed as conservator for SM and AM for the purposes of settle SM and AM's case, executing the appropriate settlement documents, and utilizing the minors' settlement funds for the benefit of the minors as ordered herein.

**IT IS FURTHER ORDERED** that the parties' settlement of the minors' claims is **approved**, and the settlement amount of $175,000.00 shall be distributed according to the terms and conditions of settlement as follows:

1. $39,375.00 in attorneys' fees to Michael Garth Moore;
2. $41,817.08 in attorneys' fees and costs to Williams Blackhurst Terhune, PLLC;
3. $46,903.96 to AM to be held in annuity and distributed as described in the Settlement Agreement and Qualified Assignment and Release Agreement (Doc. 224-3); and
4. $46,903.96 to SM to be held in annuity and distributed as described in the Settlement Agreement and Qualified Assignment and Release Agreement (Doc. 224-3).

**IT IS ORDERED** that Plaintiffs' Motion for Status Conference (Doc. 225) is **denied as moot**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 30th day of May, 2025.

Honorable Steven P. Logan
United States District Judge